## Williams *v.* Williams, Appellant.

410

Argued November 19, 1953. Before Rhodes, P. J., Hirt, Ross, Gunther, Wright and Woodside, JJ.

*Clyde P. Bailey,* with him *S. H. Reichman,* for appellant.

*I. Elmer Ecker,* with him *E. P. Curran,* for appellee.

OPINION BY WOODSIDE, J., April 21, 1954:

This is an appeal by the defendant from an order of the court below denying defendant's request for a reduction in the amount of alimony to be paid the appellee and further ordering the payment of counsel fees and witness fees incurred by the appellee.

On April 27, 1950 the lower court granted to plaintiff-appellee Syvella Williams, a divorce a mensa et thoro from the defendant-appellant, Stanley McD. Williams and awarded the plaintiff-appellee $4800 yearly alimony with counsel fees in the total amount of $2750, as well as $350 for the accountant who testified as her witness. No appeal was taken from this decree.

On December 21, 1951, the court by agreement of the parties, entered an Order directing payment of arrearages and reducing the alimony to $325 per month until September 1, 1952 at which time it was again increased to $400 per month.

In May 1953 the plaintiff-appellee obtained a rule to show cause why an attachment should not issue against the defendant for failure to pay the order in full. Defendant obtained a rule to show cause why the order should not be reduced urging that arrearages had accumulated because of his inability to pay.

On July 10, 1953 the lower court ordered that the defendant pay the arrearages in ten days; that he continue to pay alimony in the sum of $400 per month; that he pay counsel fees to plaintiff's attorney in the sum of $900 within thirty days and witness fees to the plaintiff's accountant in the sum of $100 within sixty

days. The defendant took an appeal to this Court from the order.

The defendant-appellant's contention is that the order of the court below exceeded the limit of one-third of his income in violation of section 47 of the Act of May 2, 1929, P. L. 1237, 23 PS §47. This section provides that "In cases of divorce from bed and board, the court may allow the wife such alimony as her husband's circumstances will admit of, but the same shall not exceed the third part of the annual profit or income of his estate, or of his occupation and labor . . ."

Appellant operated a tavern which in 1952 did a gross business of $187,000. He had 26 employes. At the hearing his accountant testified that his net profit from this business in 1952 was $5,408.62. Depreciation in the amount of $11,219.89 was charged off in determining the above net profit. The appellant owned and rented certain real estate. He claimed a loss of approximately $2000 on it.

The appellant's accounts showed that in 1952 he reduced his mortgage by approximately $2600, and his loans by $5000; that he paid $3200 for items of capital assets; and that he withdrew from the business about $8000 out of which he paid his wife $3600.

It is difficult to determine the exact amount of his net income. The trial judge said: "he tried to deceive the court and we do not think his testimony is credible." There is no doubt he did attempt to deceive the court concerning a new Chrysler automobile which he had recently purchased, and possibly in other respects, too.

The court concluded that a business with 26 employes which grossed $187,000 "should bring in a net profit of $18,000."

We think the court was justified in concluding that appellant's net income was sufficient to warrant an

order of $400 per month without violating Section 47 of the Act of 1929, supra. Although a part of his gross income came from the sale of food a very large percentage came from the sale of alcoholic beverages on which there is a large margin of profit.

The court below in passing upon the facts, was not compelled to accept as verity the statements of the appellant, but could make its own deductions from the evidence and accompanying circumstances. *Commonwealth ex rel. Elgart v. Elgart,* 137 Pa. Superior Ct. 418, 420, 9 A. 2d 202 (1939); *Commonwealth v. Gensemer,* 122 Pa. Superior Ct. 456, 458, 185 A. 867 (1936); *Commonwealth ex rel. Crandall v. Crandall,* 145 Pa. Superior Ct. 359, 363, 21 A. 2d 236 (1941).

The $11,219 item of depreciation involves no cash outlay. In *Commonwealth ex rel. Rankin v. Rankin,* 170 Pa. Superior Ct. 570, 573, 87 A. 2d 799 (1952) we said: ". . . such depreciation does not reduce the actual dollar income of the taxpayer, and does not enter into a computation of a husband's total income upon which a support order may be based."

Although depreciation must not be treated as an expense, neither can it be treated in the same category as net profit. If, for the purpose of complying with a court order, a man is compelled to expend or exhaust his capital, without opportunity to maintain and preserve that which makes his business possible, it will eventually work to the detriment of both the parties.

The present order is $400 per month. In addition the appellant is paying the taxes and expenses of a 7 room house owned by the appellant and appellee jointly and in which the appellee is living. The value of this is not clear from the evidence. Whatever it is, the appellant too gets certain living expenses out of the business which also should be considered.

To justify the order made in this case the court must be able to find from the evidence an income or earning capacity of approximately $15,000 or more. A majority of this Court feels that under the evidence the court could make such finding and that to make an order of $400 was not an abuse of discretion nor was it in violation of the aforesaid section 47.

The appellant also contends that the lower court was without authority to order the payment of counsel fees and expenses in connection with a hearing on a petition for attachment after the final decree of divorce had been entered and counsel fees paid upon such final decree.

While the Act of May 25, 1933, P. L. 1020, Section 1, 23 PS §46, expressly provides for payment of counsel fees and expenses in cases of divorce the statute is silent as to payment of such fees in ancillary proceedings subsequent to the granting of a final decree. This question has not been expressly considered by our appellate courts. However, in other jurisdictions under similar circumstances it has been held that since the trial court has the power to "annul, vary or modify" awards of alimony, the jurisdiction of the court is prolonged after final judgment of divorce so as to authorize an allowance of counsel fees. See *Fox v. Fox*, 263 N. Y. 68, 188 N.E. 160 (1933).

The Connecticut Supreme Court of Errors in a recent decision said: "The question is whether the power to make an allowance continues after the original decree, regardless of whether that power is inherent in the court, as some of the cases hold, or is granted by statute. As the jurisdiction of the court to modify the decree in matters of alimony and custody is a continuing one, so too, in reason and justice, is its power to make an allowance when these matters are again in

issue after the final decree." *Krasnow v. Krasnow*, 140 Conn. 254, 99 A. 2d 104, 107-8 (1953). See also 27 C.J.S. §221, p. 918, 919.

We are inclined to agree with the rationale of these pronouncements from other jurisdictions and the lower court was accordingly justified in granting an order for counsel and witness fees in this case.

Appellant further contends that the amount of counsel fees and expenses allowed to the appellee is excessive. This is a matter within the discretion of the court below. (See *Brady v. Brady*, 168 Pa. Superior Ct. 538, 79 A. 2d 803 (1951)). Assuming that the counsel fees are to cover service in connection with this appeal as well as those in the court below we are of the opinion that there was no abuse of discretion by the lower court.

Order affirmed.